**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mike W. Morgan,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of Social Security,<br><br>　　　　　　Defendant. | No. CV12-1983 PHX DGC<br><br>**ORDER** |

　　　　Plaintiff Mike W. Morgan applied for disability insurance benefits and supplemental security income on May 13, 2008, claiming to have been disabled as of September 15, 2006. Tr. 165. His claim was denied initially on September 18, 2009 (Tr. 90-93), and upon reconsideration on January 6, 2009 (Tr. 99-101). Plaintiff was granted a video teleconference hearing in which he appeared in Phoenix, Arizona, before an Administrative Law Judge ("ALJ") who presided over the hearing from San Jose, California, on November 9, 2010. Tr. 25, 42. The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 25-37. The ALJ's decision became Defendant's final decision when the Appeals Council denied review on July 26, 2012. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The parties have not requested oral argument. For reasons that follow, the Court will affirm Defendant's decision.

**I.　Standard of Review.**

　　　　Defendant's decision to deny benefits will be vacated "only if it is not supported

by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

**II.   Analysis.**

For purposes of Social Security benefits determinations, a disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Determining whether a claimant is disabled involves a five-step evaluation. The claimant bears the burden in steps one through four of showing that (1) he is not engaged in a substantial gainful activity, (2) he has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work.[1] If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. The Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful

---

[1] RFC is the most a claimant can do in light of the limitations caused by his impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945 (a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

activity since his alleged onset date. Tr. 27. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: idiopathic sensory peripheral polyneuropathy and moderate lumbar degenerative disc disease. *Id.* The ALJ determined at step three that none of these impairments or their combination met or equaled a listed impairment. Tr. 33. The ALJ then considered the entire record and determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following restrictions: stand for no more than two hours in an eight-hour workday; no more than occasionally push, pull, balance, climb stairs or ramps, and operate foot controls with the lower extremities; never climb ladders, ramps, or scaffolds; no more than frequently stoop, kneel, crouch, and crawl; and avoid moderate exposure to environments with unprotected heights and rapidly moving machinery. Tr. 33. At step four, the ALJ determined that Plaintiff was not disabled because he was capable of performing his past relevant work. Tr. 37.

Plaintiff argues that the ALJ erred by improperly weighing medical opinions (Doc. 13 at 7-17) and by improperly rejecting his symptom allegations (*id.* at 17-24). Defendant contends the decision is supported by substantial evidence and free from legal error. Doc. 15 at 1.

**A.     Medical Opinion Evidence.**

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Regarding the weight that an ALJ should give to a particular medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ may reject the opinion of a treating or examining physician by making "findings setting forth specific legitimate reasons for doing so that are based on

substantial evidence in the record." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Id.*

Opinions of examining or consulting physicians alone may constitute substantial evidence supporting the ALJ's decision when they are consistent with other evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) ("[T]he reports of consultative physicians . . . may serve as substantial evidence."); *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *see also* 20 C.F.R. § 404.1527(f) (stating that the opinions of non-examining physicians constitute medical evidence).

### 1. Drs. Jose Pierrend, M.D., and Richard Tapia, M.D.

Plaintiff's treating physician, Dr. Pierrend, completed a work-related activities assessment in September 2009. Tr. 516. Dr. Tapia, Plaintiff's other treating physician, completed a similar assessment in October 2010. Tr. 697. In their assessments, Drs. Pierrend and Tapia both opine that Plaintiff suffers from moderate to moderately severe pain and is unable to work fulltime on a regular and consistent basis.[2] Tr. 515-16, 696-97. Dr. Pierrend opined that in an eight-hour workday, Plaintiff could sit and stand for less than one hour, and lift and carry between 10 and 20 pounds. Tr. 696. Dr. Tapia opined that in an eight-hour workday, Plaintiff could sit and stand for less than two hours, and lift and carry between 10 and 15 pounds. *Id.*

The ALJ gave both treating physicians' opinions "little weight." Tr. 36. The ALJ

---

[2] The Court addresses the opinions of Drs. Pierrend and Tapia together because the ALJ did (Tr. 36) and Plaintiff's brief does the same (Doc. 13 at 7-14).

1 found that the opinions of Drs. Pierrend and Tapia were "too restrictive" and "inconsistent" with their own objective findings and the medical findings of other medical specialists who found normal neurological processes as well as equal and full motor strength. *Id.* The ALJ noted that Plaintiff met with Dr. Pierrend in September 2009, when the medical assessment was completed, but did not follow up with Dr. Pierrend again until July 2010. The ALJ therefore "question[ed] the extent of [Dr. Pierrend's] treatment with the claimant." *Id*. The ALJ noted that Dr. Tapia's treatment notes show that he treated Plaintiff primarily for hypertension, suggesting that "Dr. Tapia might not be in the best position to understand the limitations of the claimant's sensory peripheral neuropathy." *Id*. The ALJ noted that Plaintiff visited a pain clinic for foot pain, but otherwise did not seek treatment for his alleged impairments from December 2009 to September 2010. The ALJ concluded that Plaintiff likely would have sought "more frequent and substantial treatment" during this time if his restrictions had been as severe as suggested by Drs. Pierrend and Tapia. *Id*.

Plaintiff argues that the ALJ did not provide clear and convincing reasons to discount the opinions and, in discounting the opinions, that the ALJ did not comply with 20 C.F.R. § 404.1527. Doc. 13 at 9-13. The Court disagrees. Plaintiff points to treatment notes allegedly indicating that his pain is consistent with objective findings (*id.* at 8-9 (citing Tr. 290, 359, 362; 429, 512; 520-30, 734; 736-39)), but has not pointed to the treatment notes of either Dr. Pierrend or Dr. Tapia, and thus has not shown that the ALJ erred in finding their opinions inconsistent with their own objective findings. *Id.* at 8-10. Plaintiff argues that the ALJ erred in discounting the opinions of Drs. Pierrend and Tapia by "offering a conclusion that the claimant was responding to treatment" (*id.* at 11), but that was not a reason the ALJ provided for discounting the opinions. *See* Tr. 36. The ALJ rejected the opinions of Drs. Pierrend and Tapia by providing a lengthy evaluation of the medical evidence (Tr. 27-33, 35) and pointing to clinical evidence that does not comport with the restrictiveness of their opinions. This does not constitute legal error. *See Thomas*, 278 F.3d at 957. The Court finds that the ALJ provided clear and

1  convincing reasons, described above, for discounting the opinions of Drs. Pierrend and
2  Tapia.

### 2. Dr. William Allison, Ph.D., Psychology.

Dr. Allison completed a psychological examination of Plaintiff on September 10, 2008. Tr. 372. Dr. Allison's notes from the examination indicate that Plaintiff's chief complaints were "neuropathy and 'stroke.'" Tr. 373. Plaintiff reported that he drove 32 miles roundtrip to get to the appointment and that he had no problems driving (Tr. 372), reported that he sleeps eight hours a night, that his appetite is good, and that he remains interested and motivated (Tr. 373). Dr. Allison noted that Plaintiff exhibited a clear sensorium, fluent speech without pressure, logical and goal-directed thinking, appropriate affect, euthymic mood, intact judgment, poor insight, and no psychotic symptoms. Tr. 375. On the Wechsler Adult Intelligence Scale III ("WAIS-III"), Plaintiff obtained an 89 full-scale IQ score, which is in the low average range. Tr. 375-76. On the Wechsler Memory Scale III ("WMS-III"), Plaintiff obtained memory index scores ranging from superior to low average. Tr. 377-78. Dr. Allison diagnosed Plaintiff as being status post transient ischemic attack and with a Global Assessment of Functioning ("GAF") score of 71.[3] Tr. 379. Based on the evaluation, Dr. Allison noted that Plaintiff "demonstrated no loss in cognitive abilities due to his transient ischemic attack." *Id.* Additionally, Dr. Allison concluded that "[t]here is no indication from the psychological testing or the interview today of any cognitive difficulties which would preclude him from working. He has no emotional or psychological difficulties that would require treatment." *Id.* Dr. Allison further opined that Plaintiff did not have a condition that would impose any limitation for 12 months. Tr. 380. The ALJ gave "significant weight" to Dr. Allison's

---

[3] The GAF scale ranges from 1 to 100 and reflects a person's overall psychological, social, and occupational functioning. *See Morgan*, 169 F.3d at 598 n.1; *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 41 to 50 indicates severe symptoms or severe difficulty in functioning, while a GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in functioning. *See id.*

opinion, finding that the "opinion is consistent with his medical findings as well as [the] paucity of psychiatric treatment." Tr. 36-37.

Plaintiff argues that Dr. Allison failed to review Plaintiff's medical records predating his 2007 transient ischemic attack and, "[d]ue to this failure, Dr. Allison was precluded from making a comparison with [Plaintiff]'s mental state pre transient ischemic attack." Doc. 13 at 14-15. Plaintiff submits that the "[t]he combined effect of the impairments" resulting from his transient ischemic attack "were not addressed or factored into Dr. Allison's conclusions." *Id.* at 15. Based on this failure, Plaintiff argues that "it was error for the ALJ to interpret the opinion as demonstrating a lack of exertional and non-exertional limitation." *Id.*

Plaintiff's argument is wholly unpersuasive. Dr. Allison performed a psychological evaluation (Tr. 372-82) and, based on that independent evaluation, offered an opinion about Plaintiff's psychological and psychiatric limitations. Dr. Allison did not provide a consultative assessment based on other physicians' treatment notes, and did not offer an opinion about Plaintiff's exertional limitations. Plaintiff concedes that "Dr. Allison's opinion as to whether a psychiatric impairment exists was entitled to significant weight." Doc. 13 at 15. Because this was the only opinion Dr. Allison provided, the ALJ's decision to rely on it in assessing Plaintiff's psychological and psychiatric limitations did not constitute legal error.

### 3. Dr. Teresa Pavese, M.D.

Dr. Pavese, a state agency medical consultant, reviewed Plaintiff's medical records and completed a physical RFC assessment on August 19, 2008. Tr. 364-71. As to Plaintiff's exertional limitations, the assessment indicates that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit for about six hours in an eight-hour workday, and had a limited ability to push and pull in his lower extremities. Tr. 365. The report indicates that Plaintiff has "diminished sensation in both lower extremities" and, because of this, "could only occasionally use his legs for feeling, as per peddling, etc." Tr. 366. As to Plaintiff's postural limitations, the assessment indicates

that Plaintiff could occasionally climb a ramp or stairs, that he could never climb a ladder, rope, or scaffolds, that he could occasionally balance, and that he could frequently kneel, crouch and crawl. *Id.* Dr. Pavese found no manipulative, visual, or communicative limitations. Tr. 367-68. As to environmental limitations, Dr. Pavese opined that Plaintiff must avoid moderate exposure to hazards like machinery and heights, but was otherwise not limited. Tr. 368.

Plaintiff submits that Dr. Pavese "did not dispute moderate to moderately severe pain" (Doc. 13 at 15) and "found [Plaintiff] to suffer a lack of sleep at night" (*id.* at 16), and that these findings "are not inconsistent with treating physician opinions and symptom reporting" (*id.*). Plaintiff argues that the ALJ's failure to discuss Dr. Pavese's opinion of pain and fatigue was error. *Id.* The Court disagrees. Dr. Pavese assessed Plaintiff's RFC, and, in doing so, reviewed all the evidence in Plaintiff's file (Tr. 364), including evidence indicating that Plaintiff suffers from painful sensory peripheral polyneuropathy, has chronic bilateral foot pain, and suffers from obstructive sleep apnea, and uses medicines that cause daytime drowsiness. Based on this, Dr. Pavese assessed Plaintiff's RFC. Dr. Pavese did not offer an opinion about Plaintiff's pain and fatigue; she merely reviewed evidence showing that Plaintiff suffered from pain and fatigue.[4] A consultative physician's review and description of evidence is not medical opinion evidence. Accordingly, the Court cannot find that the ALJ erred in failing to evaluate the portion of Dr. Pavese's assessment that referred to evidence indicating Plaintiff suffers

---

[4] Plaintiff cites to the vocational expert's hearing testimony and argues that "such pain would preclude sustained full time competitive employment." Doc. 13 at 15 n.5 (citing Tr. 79, 80). The vocational expert testified that someone with an ability to do work-related physical activities as opined by Dr. Tapia (Tr. 696-97) "would not be able to perform any work" (Tr. 80). Dr. Tapia's assessment indicates that Plaintiff's moderately severe pain would further limit his ability to sustain fulltime work. Tr. 697. Dr. Pavese's RFC assessment does not indicate that Plaintiff suffers from "moderate to moderately severe pain" (Doc. 13 at 15). Accordingly, the Court cannot find that if the ALJ had accorded any weight to the portion of Dr. Pavese's assessment that summarizes medical evidence that the ALJ would have been required to find Plaintiff disabled based on the vocational expert's testimony.

from pain and fatigue.

Although the ALJ's decision does not refer to Dr. Pavese's opinion, the ALJ does appear to have afforded the opinion some weight because, as Plaintiff submits, "the ALJ's [RFC] assessment is similar to that assessed by Dr. Pavese." Doc. 19 at 6; *compare* Tr. 33 *with* Tr. 365-68. Plaintiff argues that evidence in the record does not support Dr. Pavese's opinion because she completed the assessment two years before the hearing and did not set forth the records she reviewed.[5] Doc. 19 at 7. Dr. Pavese did not specifically indicate which medical records she relied upon in making the RFC assessment, but her explanation demonstrates that she relied upon records from 1993 through 2008. Tr. 365-66. Accordingly, the Court does not agree that Dr. Pavese's opinion is unsupported by record evidence. Plaintiff argues that Dr. Pavese's opinion is inconsistent with other medical evidence because it "is markedly different from all other opinions in the file and ignores significant findings from lumbar and cervical spine MRIs." Doc. 19 at 7. Dr. Pavese's opinion is not consistent with the opinions of Drs. Pierrend and Tapia, but the ALJ properly discounted those opinions, and her opinion is consistent with the medical evidence summarized by the ALJ. *See* Tr. 35. Plaintiff attempts to discredit Dr. Pavese's opinion by stating that she is "an ophthalmologist and not board certified in any specialty." Doc. 19 at 7. As a state agency medical consultant, the ALJ was obligated to consider Dr. Pavese's opinion regardless of Plaintiff's allegations. *See* 20 C.F.R. § 404.1527(e). Because Dr. Pavese's opinion is consistent with other evidence in the record, and the ALJ's RFC assessment mirrored her RFC assessment, her opinion constitutes substantial evidence supporting the ALJ's RFC assessment. *See Thomas*, 278 F.3d at 957; *Magallanes*, 881 F.2d at 752. Any error in the

---

[5] In his reply brief, Plaintiff argues that the ALJ erred in affording any weight to Dr. Pavese's opinion. Doc. 19 at 7. Although the Court has considered and rejected the argument, the Court notes that it need not consider arguments raised for the first time in a reply brief. *Lentini v. Cal. Ctr. for Arts*, 370 F.3d 837 n.6 (9th Cir. 2004); *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

ALJ's failure to refer to Dr. Pavese's opinion is harmless. *See Tommasetti*, 533 F.3d at 1038 ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (quotation marks and citations omitted)).

### B.     Plaintiff's Testimony.

Plaintiff testified that he lives in a friend's house with his wife and that friend. Tr. 59.  Plaintiff stated that he spends his typical day watching television, that he goes grocery shopping with his wife for 45 minutes to an hour each week, and that he occasionally sees his grandchildren. Tr. 57-59, 71.  Plaintiff stated that he has not been able to work because he forgets things, has pain and numbness in his feet, pain in his lower back, and numbness in his fingers and hands. Tr. 59, 61.  Plaintiff described having had a stroke in 2005, and stated that after the stroke he suffered from weakness, numbness, a generally weaker left side, and memory problems. Tr. 63-64.  Plaintiff testified that he had a transient ischemic attack – a stroke like incident – in 2007. Tr. 65.  Plaintiff stated that after the attack he continued to have problems with the left side of his body as well as memory and concentration problems. Tr. 65-66.

Plaintiff rated his pain as a seven on a scale of one to ten, with ten being "terrible pain." Tr. 60.  Plaintiff described having muscle spasms in the tops of his feet, sharp pains on the sides of his feet, and numbness and weakness in his feet. Tr. 60-61.  Plaintiff testified that he sometimes falls because of the loss of feeling in his feet (Tr. 61) and that standing too long aggravates his feet pain (Tr. 62).  Plaintiff described his back pain as "something slipping around," and stated that the pain is not as bad as his feet pain and that it is constant and worsens at night. Tr. 61.  Plaintiff testified that bending and kneeling aggravates his back pain. Tr. 62.  Plaintiff stated that he must sit or lie down because of his back pain and that morphine helps to alleviate the pain somewhat. *Id*.  Plaintiff described feeling drowsy and lightheaded from the morphine. Tr. 71.  Plaintiff described having chronic numbness and achiness in his hands, and stated that he frequently drops things and has problems grasping because of this ailment. Tr. 63.

Plaintiff stated that his memory problems cause him to forget things, and that he uses task lists but still forgets things on his lists. Tr. 66. Plaintiff stated that he has concentration problems that make it difficult for him to follow conversations. *Id.* Plaintiff stated that his memory and concentration problems are constant. Tr. 66-67. Plaintiff testified that he has high blood pressure that is currently under control with medication. Tr. 67. Plaintiff stated that he suffers from chronic kidney disease that causes him to have to go to the bathroom more frequently than normal. *Id*.

Plaintiff testified that he can sit for about a half hour before he needs to stand because of his feet and back pain. Tr. 68. Plaintiff testified that he can stand for about a half hour before he has to sit down because of his pain. *Id.* Plaintiff stated that he gets shortness of breath and that he can walk for about 15 to 20 minutes before his pain intensifies. Tr. 69. Plaintiff described having to lie down and elevate his legs about three to four times a day. Tr. 70. Plaintiff stated that he has difficulties falling asleep and waking up. Tr. 69. Plaintiff testified that he cannot return to his past work fulltime and that he cannot perform any work fulltime because he cannot sit or stand for very long. Tr. 71-72.

The ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they are inconsistent with the RFC assessment. Tr. 34. In reaching this conclusion, the ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce the symptoms alleged. Tr. 34. Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281. This clear and convincing standard "is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

1       Plaintiff argues that the ALJ improperly rejected his subjective complaints by not specifying which statements are not credible and explaining why. Doc. 13 at 19. The Court disagrees. The ALJ's RFC assessment indicates that the ALJ found Plaintiff's statements about his ability to sit and stand not credible. In rejecting that testimony, the ALJ first found the objective medical evidence inconsistent and unsupportive of Plaintiff's allegations, and second, the ALJ found Plaintiff not credible due to inconsistencies in his testimony and inconsistencies between his testimony and his daily activities.

       As to the first, the ALJ examined the objective evidence of record and made the following findings: (1) physical therapy notes showed improved peripheral neuropathy, balance, and agility; (2) evaluation notes indicated normal posture and gait with no unusual motor movements; (3) a September 2010 physical examination showed no edema, full and equal strength, and no neurological deficits; (4) physical examinations found normal neurological processes and treatment notes indicated stable processes; (5) EEGs, lumbar MRIs and some EMG testing indicated no significant abnormality as to muscle atrophy, gait, and motor loss; (6) subsequent clinical findings – including normal brain MRI, normal EEG, normal IQ, and normal memory function – confirmed no permanent residual impact from Plaintiff's transient ischemic attack; (7) lab reports showed no significant abnormalities of kidney functions; and (8) a psychological examination showed a mood disorder that was nondurational and not acute. Tr. 35-36. In noting the above, the ALJ found that that "the evidence as a whole does not support that [Plaintiff's] impairments are as severe as alleged." Tr. 36. Plaintiff does not appear to argue that the ALJ improperly rejected his subjective symptom testimony due to a lack of supporting objective evidence, but, in any event, the Court finds that the ALJ did not err in finding the objective medical evidence inconsistent and not supportive of Plaintiff's pain allegations. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); *Batson v. Comm'r of Soc. Sec.*

- 12 -

*Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible).

As to the second, the ALJ noted Plaintiff's testimony about experiencing shortness of breath (Tr. 69), and found that this testimony was inconsistent with treatment notes indicating that Plaintiff denied shortness of breath. Tr. 36 (citing Tr. 267). The ALJ found that Plaintiff's activities of daily living do not support his allegations of severity (Tr. 36), and, as an example, noted that Plaintiff described pain in his feet, but also reported driving 16 miles to an appointment and had indicated having no problems with driving (*id* (citing Tr. 372, 188)). The ALJ also found that treatment notes indicating that Plaintiff had performed "some physical labor" "suggest[ed] that his back pain was not as severe as alleged." Tr. 36 (citing Tr. 432). Plaintiff argues that the ALJ did not explain what alleged limitation conflicts with what daily activity (Doc. 13 at 19), and specifically did "not cite any activity which demonstrates an ability to sustain a full time work pace, even at a sedentary level of exertion" (*id.* at 20). The Court disagrees. The ALJ properly considered inconsistencies in Plaintiff's testimony and inconsistencies between his conduct and daily activities in finding his testimony incredible. *See Thomas*, 278 F.3d at 958-59; *see also Curry v. Astrue*, No. 09-CV-2580-PHX-GMS, 2010 WL 3789535, at *6 (D. Ariz. Sept. 22, 2010); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Plaintiff argues that the ALJ improperly rejected his subjective complaints based on a finding that he was non-compliant with a prescribed treatment (Doc. 13 at 21-22), and that his condition was improving with a successful course of treatment (*id.* at 22-24). The ALJ did note that Plaintiff "refused an EMG of his upper extremities" and "did not fill out" a prescription (Tr. 35), but she did not offer this noncompliance as a reason to discredit Plaintiff's testimony. The ALJ referenced the noncompliance in her discussion of the objective medical evidence only. Similarly, the ALJ did not discredit Plaintiff's symptom allegations based on a finding that Plaintiff's condition was improving. The ALJ referred to medical notes indicating that Plaintiff was feeling better (Tr. 35

(citing Tr. 357, 530, 572, 698)) in her summary of medical evidence that did not comport with Plaintiff's complaints.

The Court concludes that inconsistencies between Plaintiff's testimony and objective medical evidence, as well as inconsistencies in Plaintiff's testimony itself, provide clear and convincing reasons, based upon substantial evidence, for discounting Plaintiff's credibility.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **affirmed**.
2. The Clerk is directed to enter judgment accordingly.

Dated this 12th day of August, 2013.

_____
David G. Campbell
United States District Judge